MARK S. WERNER
Deputy Federal Defender
Federal Defenders of Montana
Billings Branch Office
2702 Montana Avenue, Suite 101
Billings, Montana 59101
Phone: (406) 259-2459
Fax: (406) 259-2569
mark_werner@fd.org
      Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM KRISTOFFER WOLF,<br><br>Defendant. | Case No. CR-15-49-BLG-SPW<br><br>DEFENDANT'S SENTENCING MEMORANDUM |

The Revised Presentence Report has set defendant's total offense level at 24 /CH I which equates to a guideline imprisonment range of 51-63 months. The presentence report writer arrived at this total offense level as follows:

    Base Offense Level (2K2.1)                     18

    Specific Offense Characteristic (2K2.1(b)(6)    +4

    Adjustment for obstruction of Justice (3C1.1    +2

      No Adjustment for Acceptance of Responsibility    0

      Total Offense Level                                24 PSR (¶¶33-41)

**The Four Point Enhancement Under 2K2.1(b)(6)(B)**

Defendant objected to the guideline calculations in the rough draft PSR. Exh.A.

In that objection defendant stated:

> . . .that he did not arm himself for an assault with the intent to commit murder. That cannot be established with any reasonable certainty. Specifically in this case there had been no assault on any specific person. There had been no assault in progress which was interrupted by outside forces.

At issue in the Revised Presentence Report is the 4 point enhancement under 2K2.1(b)(6)(B). This provision states that if the defendant possessed any firearm with intent or knowledge, it would be used or possessed in connection with another felony offense, increase by 4 levels. The Revised PSR asserts the defendant knew the firearm would be used for the following felonies: Assault with a Weapon; MCA 45-5-213, Assault on a Peace Officer or Judicial Officer, MCA 45-5-210 and Arson MCA 45-6-103. PSR ¶ 34.

The application of 2K2.1(b)(6)(B) is not proper. Defendant made clear in his testimony at trial both on direct and cross-examination that the use of this weapon was for self-defense of the home. (Transcript of Defendant's Testimony, pp.16, 43, 44, 90,101).

The fact that defendant had previously stated that most fully automatics are going to handle most riot crowds and cops, or that these firearms could go through walls or shred body armor did not indicate his intent to actually use this firearm for any of the assaults the PSR lists in this enhancement application.

Defendant was describing the capacity of the firearm. P. 93, Def. Transcript. Indeed, the undercover agent went on and on in tape recordings about the capacities of a fully automatic shotgun. Defendant did not threaten to use this firearm on a named person. Defendant didn't threaten. He talked and he talked of what it could do, as did undercover agent Greg Rogers. There's a distance between that kind of talk and the expressed intent to assault or kill a specific person. There was no plan reflected by the evidence to use this firearm on a particular person. That would be intent to commit an assault.

In addition, defendant has no violent history. He always talked about the use of violence in the context of when a war starts. P. 105, Def. Transcript. What kind of a war? Who would be justified as using firearms? Under what circumstances in whatever kind of war are unclear. Defendant felt a war was coming much like the Revolutionary War fought to remove the oppression of the British government back then.

All of this doesn't mark defendant for this enhancement. Defendant came into contact with various government officials during the period of time the government

was watching and surveilling him. There was no evidence presented that he threatened a public official. He didn't like some of them. He thought some were corrupt. But he didn't threaten to kill those with whom he came in contact.

**The Two Point Enhancement Under § 3C1.1 For Obstruction.**

In ¶ 37, the PSR states that the defendant perjured himself during trial when he testified that he ordered a fully automatic firearm which was to be converted by the seller to a semi-automatic firearm. In addition, the PSR states defendant testified he met with Ed Gray multiple times regarding the shotgun outside of the recorded interviews. However, testimony at trial by the case agent and Gray was the opposite.

As to defendant testifying, he met with Gray on unrecorded occasions as untruthful testimony, defendant and Gray disagreed about this at trial. In Ed Gray's written debriefing concerning defendant's meeting with Gray and undercover agent Rogers on December 18, 2014, Gray informs that defendant specifically mentioned a Russian made Saiga shotgun when asking Rogers to get him a fully automatic shotgun. (Discovery P. 142). However, the tape recording of this conversation did not include the specifics of a Saiga brand shotgun. Wolf states only to Rogers: "Try to get me a Russian automatic shotgun too. "Discovery P. 269. This is precisely what defendant testified to at trial. P. 35, Def. Transcript. Defendant asks where did Gray get that specific information of the shotgun being a Saiga if it were not in conversation with defendant in a prior unrecorded setting(s)? There is no other

explanation. This doesn't support Mr. Gray's telling the truth as to there not being unrecorded conversations between himself and defendant.

Defendant testified that he ordered a fully automatic firearm which was to be converted by the seller to a semi-automatic firearm. That was his unwavering position at trial. This also concerns Ed Gray. This is because there are no recorded conversations reflecting this specific position or statement by the defendant. However, defendant testified at length and in specifics as to dates and locations where he encountered or met with Ed Gray and they talked about defendant wanting a Russian automatic shotgun. These meetings were obviously unrecorded. Defendant testified that he and Gray had several discussions about shotguns. P. 17, Def. Transcript.

Defendant testified that by November, 2014, he had narrowed down his choices of a shotgun he wanted to purchase as including a Saiga 12 gauge automatic shotgun on which he testified he did considerable research. P. 24, Def. Transcript. Defendant testified that he told Gray after Thanksgiving 2014, that he wanted "Dirty" to have his Class III dealer to convert such a shotgun to a semiautomatic. P. 27, Def. Transcript. And defendant testified that he wanted that particular Saiga shotgun converted because it had a tough, durable frame. P. 27, 28, Def. Transcript.

Further, after defendant made the request to Agent Rogers on December 18, 2014, of getting him a Russian automatic shotgun, defendant testified that Gray

warned him off of asking Rogers too many questions and that he should let Gray do that. Accordingly, defendant told Gray to relay to Rogers that he wanted a 12 gauge fully automatic shotgun converted to a semiautomatic by a Class three dealer, if Rogers has one. P. 35, 36, Def. Transcript.

The jury apparently believed that defendant wanted and knew he was actually getting a fully automatic shotgun and not one converted to a semi-automatic. However, whether defendant made this clear to Gray was a disputed fact at trial. This is not a reason to conclude defendant committed perjury. Defendant's testimony was certainly more direct, concise and detailed on all of these matters than Gray's evasive, non-communicative testimony.

**Conclusion**

Defendant opposes these two enhancements and he requests the Court to find that his total offense level should be level 18 which would yield a guideline imprisonment range of 27-33 months.

RESPECTFULLY SUBMITTED this 24th day of February, 2016.

/s/ Mark S. Werner
MARK S. WERNER
Federal Defenders of Montana
Counsel for Defendant

# CERTIFICATE OF SERVICE
## L.R. 5.2(b)

I hereby certify that on February 24, 2016, a copy of the foregoing document was served on the following persons by the following means:

| | |
|---|---|
| 1, 2 | CM-ECF |
| ____ | Hand Delivery |
| 3 | Mail |
| ____ | Overnight Delivery Service |
| ____ | Fax |
| ____ | E-Mail |

1. CLERK, UNITED STATES DISTRICT COURT

2. BRYAN P. WHITTAKER
   Assistant United States Attorney
   United States Attorney's Office
   901 Front Street, Suite 1100
   Helena, MT 59626
       Counsel for the United States.

3. WILLIAM KRISSTOFER WOLF
       Defendant

    /s/ Mark S. Werner
    MARK S. WERNER
    Federal Defenders of Montana
        Counsel for Defendant